IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARILYN YORK and JEROME YORK,
   Plaintiffs

v.

PUBLIX SUPER MARKETS, INC.,
   Defendant.

Civil Action No.
1:21-cv-03515-SDG

**OPINION AND ORDER**

This matter is before the Court on Defendant Publix Super Markets, Inc.'s motions to exclude Plaintiffs' expert [ECF 37] and for summary judgment [ECF 38]. For the following reasons, Publix's motion to exclude is **GRANTED**, and its motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The Yorks' negligence and loss of consortium claims shall proceed to trial.

**I.   BACKGROUND**

This case arises out of a slip and fall Plaintiff Marilyn York suffered at a Publix grocery store in Alpharetta, Georgia.[1] Marilyn is seeking recovery for injuries allegedly resulting from the fall, claiming that Publix was negligent in its set up, inspection, and maintenance of the area surrounding the floral displays where she slipped.[2] Her husband, Plaintiff Jerome York, seeks damages for loss of

---

1   ECF 38-7, ¶¶ 8, 17.

2   ECF 1-1, ¶¶ 14–15, 23–24.

consortium.³ In their complaint, the Yorks additionally raised claims for negligent hiring, training, and supervision, and for attorneys' fees, but Plaintiffs have abandoned those claims and thus Publix's motion for summary judgment as to those claims is granted.⁴

The parties agree on many of the important facts. While walking past Publix's floral department at approximately 10:49 a.m. on September 2, 2019, Marilyn slipped and fell.⁵ Marilyn and Publix employees found water on the floor in the area where she slipped, but only after her fall;⁶ Marilyn did not see anything on the floor before that.⁷ Water on the floor in this area may be caused by customers removing flowers from canisters of water in floral display cases.⁸ Publix does not admit that the fall caused Marilyn's injuries,⁹ but neither does Publix assert a lack of injury or causation as grounds for summary judgment.¹⁰

---

3   *Id.* ¶¶ 32–34.
4   ECF 41-1, at 8–9.
5   ECF 38-7, ¶¶ 8, 17.
6   *Id.* ¶¶ 20, 25; ECF 41-2, ¶¶ 20, 25.
7   ECF 38-7, ¶ 18; ECF 41-2, ¶ 18.
8   ECF 38-7, ¶ 29; ECF 41-2, ¶ 29.
9   ECF 45, ¶ 19.
10  *See generally,* ECF 38-1.

Publix made available plastic flower bags for customers to use when removing flowers from the canisters to prevent water from dripping on the floor,[11] but Publix is aware that customers do not always use the bags.[12] In the thirty minutes before Marilyn's fall, at least eight customers retrieved flowers from the display cases and only two utilized the bags.[13] Publix placed two anti-slip mats in front of a refrigerated display case and a "coffin type" display case, but did not place mats in front of the temporary or mobile floral display cases that were the source of the water that allegedly caused Marilyn's fall.[14] In addition, video evidence shows that no anti-slip mats were next to the flower-bag stand, which is where Marilyn fell.[15]

Factual disputes remain over a handful of issues: whether a Publix employee was in the floral display area and could have or should have removed the water prior to Marilyn's fall;[16] which customer could have been the source of

---

[11] ECF 38-7, ¶ 6; ECF 41-2, ¶ 6.

[12] ECF 41-3, ¶ 9; ECF 45, ¶ 9.

[13] ECF 41-3, ¶¶ 20–21; ECF 45, ¶¶ 20–21. Publix admits this fact but adds in response that, "[a]ll, but one, were doing so from the front of the display as designed," without explaining the implications of this response. ECF 45, ¶¶ 20–21.

[14] ECF 41-3, ¶¶ 4, 12, 14; ECF 45, ¶¶ 4, 12, 14.

[15] Apr. 17, 2023 D.E. (Videos 1–3).

[16] ECF 38-7, ¶¶ 22–23; ECF 41-2, ¶¶ 22–23; ECF 41-2, ¶ 22; ECF 45, ¶ 22.

the water and thus how long the water might have been on the floor;[17] and whether any Publix employee inspected the floor in the area in the hour and fifteen minutes before the incident.[18]

The Yorks argue that Publix was negligent in failing to place additional anti-slip mats in the floral department and in failing to reasonably inspect its premises and remove hazards to its customers.[19] Publix argues that it is entitled to summary judgment because it did not have constructive knowledge of the hazard that caused Marilyn's fall given that (1) none of its employees were "in the immediate vicinity of the incident and had an opportunity to correct the alleged hazard," and (2) it implemented reasonable inspection and cleaning policies and the Yorks failed to prove how long the water was on the floor.[20] Because the Court finds the facts in this case create a jury question as to Publix's constructive knowledge of the water on the floor, the motion for summary judgment with respect to the Yorks' negligence and loss of consortium claims is denied.

---

[17]  ECF 38-7, ¶ 30; ECF 41-2, ¶ 30.
[18]  ECF 41-3, ¶ 23; ECF 45, ¶ 23.
[19]  ECF 41-1, at 1, 5–8.
[20]  ECF 38-1, at 10, 12–16.

## II.     LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255. *See also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the court in evaluating summary judgment. *Anderson*, 477 U.S. at 255. *See also Graham*

*v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). For premises-liability suits like this one, Georgia appellate courts have repeatedly affirmed that routine issues like "the negligence of the defendant and the plaintiff" are generally jury questions, and that "summary judgment [should be] granted only when the evidence is plain, palpable, and undisputed." *Jones v. Krystal Co.*, 231 Ga. App. 102, 107 (1998) (quoting *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (1997)).

## III. DISCUSSION

### A. The Yorks' Expert Mark Williams Is Excluded.

As a preliminary matter, the Court grants Publix's motion to exclude the Yorks' expert Mark Williams as late-disclosed in violation of Fed. R. Civ. P. 26 and this Court's Local Rule 26.2(C).[21] Fed. R. Civ. P. 26(a)(2)(D) obligates parties to disclose experts "at the times and in the sequence that the court orders." This Court, through its local rules, has provided that experts must be designated "sufficiently early in the discovery period" so as to permit the opposing party the

---

[21] Publix, in the alternative, argues that Williams should be excluded as unqualified under the *Daubert* standard and Fed. R. Evid. 702(b). Because the Court excludes Williams for the Yorks' failure to comply with the Local Rules, it does not address Publix's *Daubert* argument.

opportunity both (1) "to depose the expert," and (2) "to name its own expert witness sufficiently in advance of the close of discovery so that a similar discovery deposition of the second expert might also be conducted prior to the close of discovery." LR 26.2(C), NDGa. The Local Rules further provide that courts "shall not" permit a party that fails to comply with these requirements to offer a late-disclosed expert's testimony without "a showing that the failure to comply was justified." *Id.*

The Yorks do not seem to dispute that their disclosure of Williams was untimely under LR 26.2(C). Discovery in this case commenced on September 25, 2021.[22] The Yorks first disclosed Williams on February 2, 2023, almost a year and a half later, with discovery slated to close at the end of that month on February 28.[23] The Yorks then disclosed Williams's report on February 24, four days before discovery was set to expire, and supplemented his report with exhibits on the day discovery was set to close, February 28.[24] That same day, the parties moved for[25]—and were granted[26]—a two-week extension of the discovery deadline through

---

[22] Discovery commenced thirty days after Publix answered the Yorks' removed complaint on August 26, 2021.[22] LR 26.2(A), NDGa.

[23] ECF 31.

[24] ECF 40, at 2.

[25] ECF 33.

[26] ECF 34.

7

March 14, to allow the Yorks to conduct a second 30(b)(6) deposition scheduled for early March.[27] The discovery period closed on March 14. It is therefore clear that the Yorks' February 2 disclosure did not leave sufficient time for Publix to disclose its own expert and arrange for that expert's deposition before either February 28 or March 14.

Because the Yorks cannot assert that Williams's disclosure was timely, they assert instead that their untimeliness was nevertheless justified, for two reasons: (1) Publix's delay in scheduling the second 30(b)(6) deposition, and (2) the fact that Publix could have asked for an extension of the discovery period to accommodate the Yorks' delay, but did not.[28] But the Yorks do not explain why Publix's delay in arranging for a deposition that occurred in *March* had any impact on the timing of an expert disclosure that occurred in *February*. Nor does the Court construe LR 26.2 as putting the onus on the non-disclosing party to mitigate any prejudice caused by an untimely disclosure. Because the Yorks have failed to show why Williams's untimely disclosure was justified, his testimony is excluded.

---

[27] ECF 33, at 2 ¶ 3.
[28] ECF 40, at 6.

## B.     A Genuine Dispute of Fact Remains as to Publix's Negligence.

Under Georgia law,[29] which the parties agree governs this case,[30] an "owner or occupier of land . . . is liable in damages to [invitees on the premises] for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1. To recover damages in a negligence suit based on premises-liability principles under Georgia law, "an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *River Place at Port Royal Condo. Ass'n, Inc. v. Sapp*, 358 Ga. App. 632, 634–35 (2021). For purposes of this motion, the parties do not appear to dispute that Marilyn lacked knowledge of the hazardous condition—the water on the floor—despite exercising ordinary care. Furthermore, the Yorks concede that Publix did not have actual knowledge of water on the floor.[31] Thus, this case turns on whether a reasonable fact finder

---

[29] In an action, such as this one, premised on diversity of citizenship subject matter jurisdiction, a federal court "must apply the controlling substantive law of the state" in which it sits. *Cambridge Mut. Fire Ins. Co. v. City of Claxton*, 720 F.2d 1230, 1232 (11th Cir. 1983) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Thus, the Court must apply Georgia state law to the substantive issues underlying Plaintiffs' claims.

[30] Both parties' summary judgment briefs begin their legal discussion with O.C.G.A. § 51-3-1. ECF 38-1, at 7; ECF 41-1, at 5.

[31] ECF 41, ¶ 14.

9

could conclude that Publix had constructive knowledge of the hazard that caused Marilyn's fall.

Georgia law makes clear that a landowner's constructive knowledge arises in at least two instances: (1) when the landowner "creates a dangerous condition on his property," *Hamblin v. City of Albany*, 272 Ga. App. 246, 248 (2005), *and* (2) when the landowner reasonably should have discovered and corrected a dangerous condition but failed to do so, *Kroger Co. v. Schoenhoff*, 324 Ga. App. 619, 620 (2013). Imputing knowledge to the landowner in both instances makes sense, given the two aspects of the landowner's duty of care: (1) to take reasonable precautions to mitigate *foreseeable* risks, *and* (2) to reasonably inspect the property to discover and mitigate *unknown* risks. *Johnson v. Autozone, Inc.*, 219 Ga. App. 390, 392 (1995). Thus, while the Georgia case law on slip-and-fall cases is generally predicated on the second duty—that of inspection—a landowner also has an affirmative duty to take reasonable measures to guard against foreseeable risks arising from its "arrangement and use of the premises." *Id.* Viewing the record in this case in the light most favorable to the Yorks, a reasonable jury could conclude that Publix had constructive knowledge of water on the floor because: (1) Publix's arrangement of its floral department created a foreseeable risk of a slip and fall; or (2) Publix's inspection of the floral department floor was not reasonably calculated to discover unknown spills.

First, a jury question exists as to whether knowledge of the water on the floor should be imputed to Publix because its own conduct precipitated the dangerous conditions that led to Marilyn's injury. The parties do not dispute that Publix was entirely responsible for arranging the floral department.[32] That arrangement included placing the flower-bag stand next to the area where Marilyn slipped and fell, a high-traffic corridor between the front of the store and the produce department.[33] A reasonable jury could conclude that this arrangement created a foreseeable risk that customers would slip on water dripped onto the floor from retrieved flowers. Were the jury to so find, it would then consider whether Publix could have taken additional reasonable precautions to protect its customers from such a risk. *Id.* at 392. When Marilyn fell, anti-slip mats were placed in front of some floral display cases but not others,[34] and no anti-slip mats were placed next to the plastic-bag stand.[35] A reasonable jury could find that Publix's failure to place more anti-slip mats within the floral department—given the relatively light cost of such a precaution, the demonstrably high level of customer traffic through the area, and the potentially damaging consequences of

---

[32] ECF 41-3, ¶¶ 2–7; ECF 45, ¶¶ 2–7.

[33] Apr. 17, 2023 D.E. (Videos 1–3).

[34] ECF 41-3, ¶14; ECF 45, ¶ 14.

[35] *See generally* Apr. 17, 2023 D.E. (Videos 1–3).

a sudden fall on a hard surface—breached its duty of care. For this reason alone, summary judgment on the Yorks' negligence and loss of consortium claims is denied.[36]

Second, a jury question exists as to whether knowledge of the water on the floor should be imputed to Publix because it failed to reasonably inspect the floor for spills in light of the unique danger posed by water on the floor in the floral department. A plaintiff may prove constructive knowledge of a hazard by showing that "the hazardous condition had existed for a sufficient length of time that it would have been discovered and removed had the proprietor exercised *reasonable care in inspecting the premises*." *Schoenhoff*, 324 Ga. App. at 620 (emphasis added). In addition, an *en banc* Georgia Court of Appeals has explained that the length of time a hazardous condition existed is only relevant at summary judgment when the defendant has established that (1) "reasonable inspection procedures were in place" and (2) those procedures were "followed at the time of the incident." *Straughter v. J.H. Harvey Co.*, 232 Ga. App. 29, 30 (1998). And here, a factual dispute exists as to both.

---

[36] Publix's only argument with respect to the loss of consortium claim is that it must fail because the negligence claim upon which it is based fails. ECF 38-1, at 20. Thus, given the denial of summary judgment on the negligence claim, Publix is also denied summary judgment on the loss of consortium claim.

12

First, a factual dispute exists as to whether Publix's inspection procedures for the floral display area floor were reasonable. Whether such procedures are reasonable "varies with each case, depending upon the nature of the premises, the size of the premises, the number of invitees, the nature of the dangerous condition, and the location of the premises." *River Place*, 358 Ga. App. at 637. Where facts show "that the premises are unusually dangerous," the law may in some circumstances impose a "duty to patrol the premises continuously." *Brown v. Host/Taco Joint Venture*, 305 Ga. App. 248, 252 (2010). Thus, in *Jones v. Krystal Co.*, the Georgia Court of Appeals held in a slip-and-fall case that the "nature of the floor, [such] that it would hide spills," the fast-food restaurant's placement of trash receptacles, the size of the area in question, and the frequency with which customers passed through the area "gave rise to a jury question on the part of the owner/occupier as to the duty to conduct more frequent inspections and to anticipate spills, leaks, or dropped food around the trash receptacle, because such conditions made the premises unusually dangerous." 231 Ga. App. at 103.

Here, Publix relies on its "Don't Pass it Up, Pick it Up" training and policy to establish that it instituted and carried out reasonable inspection policies at the time of the incident.[37] Under this policy, Publix's employees are trained to "keep

---

37   ECF 38-1, at 12–13.

a towel in their pockets to equip them to take care of small spills" and to "inspect their surroundings and to pick up anything that is out of place."[38] And indeed, such a policy might be a reasonable precaution for certain portions of the store. But the specific question here is whether Publix's policy was reasonable for the floral department, where a 30-minute video shows eight customers retrieving wet flowers from display cases, and where Publix itself acknowledges that the resulting water on the floor was *impossible to detect through its normal inspection procedures*.[39] Here, similar to the facts in *Jones*, the difficulty of physically detecting the water on the floor, Publix's placement of the flower displays and flower-bag stand, and the amount of customer traffic through the area, all create a jury question over Publix's duty to anticipate more frequent spills and accordingly conduct more frequent inspections than otherwise called for by its policy.

Second, a factual dispute exists as to whether Publix followed its own inspection procedures. Even when an inspection policy is reasonable, if the evidence allows a reasonable conclusion that the policy was not followed on the

---

[38] *Id.*

[39] *Id.* at 11, 16–17. Publix's argument that the invisibility of water absolves it of negligence under these facts is particularly baffling. From the fact that the water on the floor was not discovered through its normal inspection procedures, Publix infers that water on the floor is undiscoverable. The more natural inference, it seems to the Court, is that Publix's normal inspection procedures were insufficient.

occasion in question, a defendant is not entitled to summary judgment based on its lack of constructive knowledge. *Donastorg v. Rainbow USA, Inc.*, 342 Ga. App. 215, 218 (2017). Here, the Yorks assert that no Publix employee inspected the floral department floor in the roughly one hour and fifteen minutes prior to Marilyn's fall.[40] Publix disputes this claim by noting that "[a]n associate walked through the area about sixteen minutes before the fall."[41] But "walked through" and "inspected the floor" are not necessarily synonymous. A jury question exists as to whether "walking through the area" reasonably complies with Publix's stated policy that employees "inspect their surroundings and . . . pick up anything that is out of place."[42] Because jury questions exist as to Publix's execution of its own policy just prior to the incident in question, summary judgment is denied.

In concluding, the Court notes the factual similarities between this case and the above-cited case, *Kroger v. Schoenhoff*, likewise a slip-and-fall case in a grocery store floral department. 324 Ga. App. at 619. *Schoenhoff* held that there was sufficient evidence for the jury to find constructive knowledge of water on the floor when "water dripping on the floor in the floral department was a recurrent problem, Kroger had on other occasions ameliorated the problem by placing mats

---

[40] ECF 41, ¶ 23; ECF 45, ¶23.

[41] ECF 45, ¶ 23.

[42] ECF 38-1, at 12.

on the floor to catch the water, and on the day [the plaintiff] fell, Kroger neither placed mats on the floor nor did it inspect for anticipated spills in the floral area at any point during the entire shopping day." *Id.* at 623. Here, too, water dripping on the floor in the floral department was a recurrent problem; Publix had ameliorated that problem by placing anti-slip mats on the floor to catch the water; where Marilyn fell, Publix had not placed any mats; and Publix arguably failed to inspect the floral department floor for over an hour. And though the length of time in which Publix "did not inspect for anticipated spills in the floral area" is significantly shorter in this case, Georgia law indicates that the length of time is immaterial at summary judgment if a jury question exists as to the reasonableness of the proprietor's inspection. That, combined with the otherwise analogous factual similarities between this case and *Schoenhoff*, affirms the Court's conclusion that summary judgment should be denied on the Yorks' negligence and loss of consortium claims.

## IV.     CONCLUSION

Publix's motion to exclude the Yorks' expert [ECF 37] is **GRANTED**, and its motion for summary judgment [ECF 38] is **GRANTED IN PART** and **DENIED IN PART**. The Yorks' negligence and loss of consortium claims shall proceed to trial. The parties are ordered to file their joint Proposed Pretrial Order within 30 days of this Order.

**SO ORDERED** this 30th day of March, 2024.

                                                                                   Steven D. Grimberg
                                                                                   United States District Judge